## Staunton.

### DEATON GROCERY CO. V. PEPPER.

SEPTEMBER 27, 1900.

Absent, Riely, J.

1. LIENS—*Additional Security—Loss of Securities—Novation—Case in Judgment.*—Where the security furnished by a deed of trust, given as additional or collateral security for the payment of a judgment, is entirely lost to the judgment creditor, he may enforce the judgment for its full amount against other property of the judgment debtor. In the case in judgment, the evidence shows that the deed of trust was not intended as a novation of the debt, and that the sale made by the trustee, at which the judgment creditor purchased, was not made subject to the vendor's lien on the property conveyed in trust.

Appeal from a decree of the Circuit Court of Montgomery county, pronounced May 15, 1899, in the chancery suit of *New York Enamel & Paint Co.* v. *Deyerle & Sons,* wherein appellant filed its petition.

*Reversed in part.*

The opinion states the case.

*Henry & Graham,* and *J. Hampton Hoge,* for the appellant.

*Phlegar & Johnson,* for the appellee.

CARDWELL, J., delivered the opinion of the court.

The Deaton Grocery Company, assignees of Jones & Deaton,

held a judgment against A. J. Deyerle & Sons and J. E. Pepper for $810.61, with interest and costs, obtained in the Hustings Court of the city of Roanoke at its March term, 1893. A. J. Deyerle & Sons were, at the time, or soon thereafter became, insolvent, leaving J. E. Pepper as the only solvent judgment debtor from whom the judgment could be made. The Deaton Grocery Company, not desiring to press Pepper, in their negotiations relative to the judgment, took a deed of trust from F. P. Pepper, a son of J. E. Pepper, to B. Lacy Hoge, trustee, dated October 20, 1893, and conveying, with covenants of general warranty, a house and lot in the town of Elliston, to secure a note of F. P. Pepper of even date with the deed, drawn to the order of the Deaton Grocery Company, payable one year from its date, for the sum of $1,028.79, the aggregate of the said judgment, including interest, costs and attorney's commissions for its collection. Default having been made in the payment of the note secured, the trustee sold the house and lot at public auction on the 1st day of December, 1894, and the property was purchased by the Deaton Grocery Company at the price of $750, and on or about that date the trustee conveyed the property to the purchaser.

A short time after this sale, Mrs. A. D. Campbell brought her suit in equity in Montgomery Circuit Court to enforce a vendor's lien held by her on the lands in the town of Elliston, that she had previously sold to the Elliston Development Company—the lot in question being a part of the land to which this vendor's lien attached, and the Elliston Development Company having sold it to R. M. Deyerle, a member of the firm of A. J. Deyerle & Sons, and conveyed it to F. P. Pepper, at the request of Deyerle, who was financially embarrassed.

The Deaton Grocery Company, relying upon the representations made to its representative and to its attorney by R. M. Deyerle and J. E. Pepper, when the deed of October 20, 1893, was executed, to the effect that Mrs. Campbell had agreed with

R. M. Deyerle that if he would build a drugstore upon the lot in question, she would release her vendor's lien thereon, and that the agreement had been complied with on the part of R. M. Deyerle, thereby entitling him and F. P. Pepper to the release of the house and lot from the vendor's lien, appeared in that suit, and resisted the enforcement of the vendor's lien as to the house and lot, but this contention was successfully combated by Mrs. Campbell, and the house and lot entirely lost to the Deaton Grocery Company.

At the November term (1897) of the Circuit Court of Montgomery county, appellant filed its petition in the suit of the *New York Enamel & Paint Co.* v. *A. J. Deyerle & Sons et als.*, pending in said court, seeking to enforce its original judgment against A. J. Deyerle & Sons and J. E. Pepper; the latter being solvent and owning lands upon which the judgment became a lien at its rendition. J. E. Pepper resisted the enforcement of the judgment upon two grounds; one, that he had not been summoned in the action at law in which the judgment was obtained; the other, that there had been a substitution of securities. In other words, that by the giving of the deed of trust of October 20, 1893, by his son, F. P. Pepper, there was a novation of the judgment, and he (J. E. Pepper) had been released from it.

It was conceded, finally, that there was no merit in the first contention, and as to the second, the Circuit Court, upon the evidence *pro* and *con*, held that the execution of the deed of trust by F. P. Pepper was not a novation of the judgment, but was intended as additional, or collateral, security for its payment, but further held by its decree then made that the judgment should be credited with the net amount of the proceeds of the sale of the property conveyed in the deed of trust, made by the trustee and bid in by the Deaton Grocery Company.

From so much of this decree as requires that the judgment of the Deaton Company shall be credited with the net proceeds of the sale of the house and lot by Hoge, trustee, it obtained an

appeal to this court, and appellee, J. E. Pepper, assigns, as cross-error, that part of the decree which decides that the deed of trust was not a novation of the judgment.

· The grounds upon which the Circuit Court bases that part of its decree complained of by appellant are: First, that at the time of the execution of the deed of trust, it was known to all parties, including appellant and its counsel, that there was a vendor's lien on the property conveyed in the deed of trust in favor of Mrs. A. D. Campbell, and that the trustee did sell the property, subject to the vendor's lien, and it was purchased by appellant at the price of $750; and, second, that it appeared from the record in the suit of *Mrs. A. D. Campbell* v. *The Elliston Development Co. & als.*, that after obtaining its deed, the appellant appeared in that suit and tried to show that there was no subsisting vendor's lien on the property in favor of Mrs. Campbell.

If the deed of trust was not a novation of the judgment, but was intended only as additional, or collateral, security for the payment of the judgment, and this security was entirely lost to appellant, it would seem clear that it had the right to resort to an enforcement of the judgment, as against the property of J. E. Pepper upon which the judgment is a lien.

That it was known to all the parties, including the appellant and its counsel, that there was a vendor's lien on the property conveyed, in favor of Mrs. Campbell, and that appellant tried to show that it was not then a subsisting lien in favor of Mrs. Campbell, are circumstances to be considered in determining whether or not there was a novation of the judgment, or a substitution of securities, but they are by no means conclusive of the question.

This is the only question in the case that requires our consideration. A decision of it turns upon the evidence as to the intention of the parties, and what was their understanding when

the time for the payment of the judgment was extended and the deed of trust executed.

B. Lacy Hoge, the trustee in the deed of trust, was a member of the law firm of Hoge & Hoge, which firm was in charge of the collection of the judgment. He testifies that a day or two prior to the execution of the deed, he examined the title to the property to be conveyed, and found of record a small judgment, which was a lien thereon, and also the vendor's lien of Mrs. Campbell; that afterwards, he 'and W. E. Deaton (of the Deaton Grocery Company) saw R. M. Deyerle and J. E. Pepper and told them of these liens; that Pepper and Deyerle both stated that an execution had been levied on the stock of goods in the drugstore, which would be sufficient to satisfy the judgment, and that as to the vendor's lien, an agreement had been made with Mrs. Campbell that, if R. M. Deyerle would build a house upon the lot, she would release the vendor's lien on it; that Deyerle had built the house (a drugstore) on the lot, and Mrs. Campbell would release the lien; that J. E. Pepper, then and there agreed that, if the deed of trust was taken, he would see that the judgment was satisfied, and that the vendor's lien was "marked satisfied." He further states that J. E. Pepper agreed that, if Mr. Deaton would extend the time twelve months, and take a deed of trust upon the property, as collateral security, for the judgment, he (J. E. Pepper) would see that the judgment was satisfied, and that the vendor's lien would be marked satisfied as to this property, and upon his agreeing to do this, Mr. Deaton remarked " that he had no disposition to press Mr. Pepper, and was perfectly willing to give him the time if he was made perfectly safe, and that he would take the deed of trust"; that thereupon he (witness) drew up the deed of trust, and F. P. Pepper was sent for, who, upon arriving, wanted to know if what was being done involved him in any way, saying that the debt was not his, and the property was not his, and when assured that he would only be affected to the extent of the

property deeded, and would be in nowise liable for the debt, he (F. P. Pepper) signed the deed. Witness further says that the deed of trust was taken at the instance and request of both R. M. Deyerle and J. E. Pepper, and was taken as collateral security for the judgment; that it was expressly stated by him to J. E. Pepper, at the time the deed of trust was taken, that he would not be released from the payment of the judgment, and that Mr. Pepper said he readily understood that, but he expected, if he got the time, R. M. Deyerle would pay the judgment, and he would be saved harmless; that as they started away, Mr. Deaton remarked to Mr. Pepper, "Now you see that that judgment and vendor's lien are marked satisfied," and Mr. Pepper said: "I will attend to that at once." Witness further states that, before the property was advertised for sale, he saw J. E. Pepper, and told him that the note secured by the deed of trust would be credited with any amount for which the Deaton Grocery Company would purchase the property, whenever he (Pepper) would have the vendor's lien marked satisfied, and he agreed to do so; that after the purchase of the property by appellant, he went to see J. E. Pepper, and Pepper agreed to have the lien marked satisfied. ·

As to the representations made by R. M. Deyerle and J. E. Pepper, and as to what transpired at the time of the execution of the trust deed, and before, witnesss Hoge is corroborated by W. E. Deaton. He positively states that it was understood that the deed of trust was not ·a novation of the judgment or a substitution of securities, and that J. E. Pepper came to witness in the spring or summer of 1897 to get him to refrain from the enforcement of the judgment, saying that it was a just debt, and that he would sell the last thing in the world to pay his just obligations; that if he (witness) would be patient and not press him, he would make an arrangement to pay the debt, referring to the fact that witness had been kind to him, in not sooner enforcing the judgment. Witness explains that the

object appellant had in extending the time for the payment of the judgment and taking the trust deed, and in defending the suit of Mrs. Campbell to enforce her vendor's lien on the drug-store lot, was to befriend J. E. Pepper, who was only surety for the debt, and towards whom witness felt very kindly. Witness further says that J. E. Pepper in no way claimed, or even intimated a claim, that he was released from the judgment by the deed of trust, and that Pepper never applied to witness or to the Deaton Company to have the judgment in question marked satisfied.

Witness Straus, who is also connected with the Deaton Grocery Company (appellant), says that in August, 1897, J. E. Pepper came into his office, looking for Mr. Deaton, saying that he wanted to see Mr. Deaton about a debt he had against him; that he had seen Mr. Deaton, and had some talk with him about it a few weeks before. In the conversation with this witness, J. E. Pepper said he did not know what to do about it, as his attorney had *advised* him that he didn't think he ought to pay the debt, because he had not been notified that a judgment would be taken. Whereupon, witness asked Pepper if that was the only thing in the way, and he said it was.

R. M. Deyerle having died before the depositions in the case were taken, his version as to what was said, or what was understood when the deed of trust was given by F. P. Pepper, is not known.

J. E. Pepper, in his deposition, claims to have known nothing of the judgment, until just before he had the interview with W. E. Deaton in the summer of 1897, but afterwards abandons his claim that no notice was served on him in the suit in which the judgment was obtained. He denies the material statements made by witnesses Hoge and Deaton, and gives a different version of what was said, or understood, when the deed of trust was given, testifying in an evasive manner, and making inconsistent statements. He admits that he wrote, on August 16, 1897, to

Hoge & Hoge, attorneys, in reply to a letter from them asking a settlement of the judgment, saying: " F. P. Pepper will·be at home in a few days, then I can answer you more fully. It is not worth while bringing suit in the Circuit Court; if we have to pay it we can arrange to pay it without further costs." He again wrote to these attorneys on August 28, 1897, in reply to a letter from them, in which he says: " F. P. Pepper says that he agreed with R. M. Deyerle to join him in the deed of trust on the drugstore to release me on the Deaton Grocery debt. R. M. Deyerle so understood it in that way." He therein claims that no notice was served on him when the judgment was gotten, but makes no claim or mention even, in that letter or the one of August 16th, of any other defence to the judgment, or that he had any understanding with appellant, or its attorney, that he was released from the judgment by the deed of trust.

F. P. Pepper claims in his deposition that the deed of trust was given in order to release his father (J. E. Pepper) from the judgment, but he admits that he did not hear all of the conversation between J. E. Pepper and R. M. Deyerle, W. E. Deaton and B. Lacy Hoge, when it was agreed that the time for the payment of the judgment would be extended twelve months, and the deed of trust was executed by him; and he finally admitted, on cross-examination, whereby the weight of his testimony is greatly impaired, that it was agreed by all, at the time the deed of trust was given, that appellant was to have a first lien upon the drugstore property. It is manifest that this witness was testifying from impressions made upon him, as to his· father being released, by conversations he had with R. M. Deyerle about giving the deed of trust on the drugstore, and not from anything that was said to him, or in his presence, by W. E. Deaton, or appellant's attorney. His statements are inconsistent and at variance with the rational version of the transaction, as given by witnesses Deaton and Hoge, and with their

statements of the reasons for taking the deed of trust, and at variance with the statement of J. E. Pepper.

The testimony given by the remaining witnesses examined by appellee is unimportant, except the statement made by G. W. Foster that he heard F. P. Pepper ask Mr. Deaton or Mr. Hoge if the trust deed released his father, and they told him it did. This is contradicted by both Deaton and Hoge. Even if it were true, it does not impair the weight of the testimony of Deaton and Hoge as to what was understood at the time, viz., that J. E. Pepper was not to be released from the judgment, for it is shown that all then thought the drugstore worth enough to pay the judgment, if the prior liens thereon were removed; as F. P. Pepper admits they agreed to cause to be done. It further appears that the property could have been sold, after the deed of trust was given, for $1,000, had the prior liens been removed, whereby J. E. Pepper would have been relieved.

Much stress is laid, in support of the cross-error assigned, upon the interpretation given by the court below of Hoge's statement of how the property was sold under the trust deed, viz., " Sold it subject to the vendor's lien." He could only have meant, under the circumstances, that the lien had not been formally marked satisfied, for Pepper had promised before, and promised after, to have it so marked.

It is not a reasonable supposition that appellant, by bidding in the property at $750, agreed to take it at that price, subject to the vendor's lien thereon, or regardless of it, *i. e.*, assume practically its payment. Appellant was bound to have known, as the evidence clearly shows, that unless this lien was removed, the property would be of little or no value to it. If J. E. Pepper was to be released from the judgment by the substitution of the deed of trust as the security for its payment, it was an easy matter for him to have had the judgment so endorsed on the record, and it is not at all probable that the successful business man, he is shown to be, would have failed to require that the

judgment be released as to him, or fail to claim promptly, when demand was made upon him for its payment, after the drugstore lot had been sold under the deed of trust, that he was entitled to the release by reason of an understanding he had with appellant when the deed was executed. Instead of this, he sought to obtain further time within which to pay the judgment, recognizing his liability therefor, and not until he was advised by his son, F. P. Pepper, of some understanding that the latter claimed to have had with R. M. Deyerle about his being released, did he set up any such claim.

We are of opinion that the decree appealed from, in so far as it requires the judgment of appellant asserted in this cause to be credited with the net proceeds of the sale of the drugstore and lot, made by Hoge, trustee, is erroneous. Therefore, in this respect, the decree will be reversed and annulled, but in all other respects, affirmed, with costs to appellant, and the cause will be remanded to be further proceeded with in accordance with this opinion.

*Reversed in part.*